IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

AUG 1 3 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| FRED PERLSTEIN,<br>Plaintiff, | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. B-07-133 |
| JOHN A. VUONO,<br>Defendant. | § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

Currently pending[1] before the Court is Defendant John A. Vuono's Motion to Dismiss Plaintiff's First Amended Complaint Under Rules 12(b)(2) and 12(b)(6) (docket No. 20). In addition to submitting significant briefing on the issues raised in Defendant's Motion to Dismiss, counsel for Defendant, John A. Vuono, and counsel for Plaintiff, Fred Perlstein, were each afforded the opportunity to argue the merits of their respective positions during the June 30, 2008, Status Conference. For the reasons set forth below Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is hereby GRANTED, and this case is hereby DISMISSED WITH PREJUDICE.

_____

[1] On June 30, 2008, the Court held a hearing on this matter thereby granting Defendant's Motion for Status Conference (docket No. 27). During said hearing the Court granted in part and denied in part Defendant's Motion to Abate Discovery Pending Ruling on Rule 12(b)2 and 12(b)6 (docket No. 23). The Court further granted in part and denied in part Plaintiff's Motion to Compel Discovery (docket No. 26).

## I. BACKGROUND

1.      **Procedural Background**

On August 21, 2007, Plaintiff, Fred Perlstein (hereinafter "Plaintiff" or "Perlstein") filed suit in the 197th Judicial District Court of Cameron County, Texas, against Defendant John A. Vuono ("Defendant" or "Vuono") and Defendant Angie Gonzalez ("Gonzalez") under state law claims for fraudulent misrepresentation, negligence, gross negligence, breach of fiduciary duty, and contribution. *See Pl.'s Orig. Pet.*, at 4 - 5.  On September 4, 2007, Vuono removed the case to this Court. *See Def.'s Mot. Dis. Am. Comp,* at 1.   After Defendant moved to dismiss Plaintiff's Original Petition, Perlstein dismissed Gonzalez and filed an amended complaint. *See Pl.'s First Am. Orig. Pet*, 1.  In his Amended Petition Plaintiff asserts a single cause of action for "contribution under the Texas Civil Practice and Remedies Code Chapter 33 from Vuono for the amount of the judgment rendered against Perlstein . . .." *Id.*  On December 14, 2007, Defendant filed his Motion to Dismiss the Amended Complaint Pursuant to Rules 12(b)2 and 12(b)6. *See Pl.'s Resp. to Def. Mot. Dis. Am. Comp.*, at 5.

2.      **Factual History**

The Brownsville Alliance, Ltd. (hereinafter referred to as "BA") was a limited partnership organized under Texas law whose sole asset was the Border's Apartments complex ("Borders") in Brownsville, Texas. *Id.*  This lawsuit arose out of the sale of Perlstein's general partnership interest in the BA. *Id.*  Prior to 2001, Perlstein, a Florida resident, was BA's general partner and Vuono, a Pennsylvania resident, was a limited partner. *See Def.'s Mot Dis. Am. Comp.*, at 3.

2

In 1997, Perlstein refinanced the Border's mortgage and recouped $3 million for BA. *Id*., at 3 - 4. Perlstein and the limited partner's disagreed as to the proper distribution of that money. *Id*, at 4. Perlstein took the position that he was entitled to the entire $3 million and the limited partners countered that it should be distributed among all of the partners. *Id*. The money was given to Perlstein's attorney, Rosenzweig, to be held in escrow. *Id*. In 1998 the limited partner's filed an interpleader in Pennsylvania federal court over the proper distribution of the money and the limited partner's claims against Plaintiff. *Id*. In that litigation Vuono, who was also a limited partner, acted as counsel representing the limited partners. *Id*. Plaintiff responded by suing Vuono in state court in Cameron County, Texas. *Id*. The Pennsylvania federal court enjoined Plaintiff from proceeding in Cameron County and Perlstein ultimately dismissed the Texas lawsuit. *Id*.

At the Pennsylvania Court's suggestion, the parties agreed to arbitrate their disputes. *See Id*. On the evening prior to the beginning of the arbitration hearing Perlstein and the limited partners reached a settlement agreement. *Id*. Pursuant to this settlement agreement, Perlstein agreed: I) to sell his general partnership interest for $75,000.00 to any party designated by a majority in interest of the limited partners; ii) to execute a transfer agreement containing any terms, conditions, warranties, and representations reasonably required by a) a majority in interest of the limited partners, b) with any substitute general partner and/or c) the management company, provided that Perlstein "will not be required to warrant or represent any matter he knows to be untrue." *See Set. Ag.,Docket #8, Ex. A.* ¶ 4.1. The Settlement Agreement gave the limited partners authority to negotiate the terms and condition for the sale of the general partnership interest. *See Id*., at ¶ 5. It also gave the limited partners the sole authority to identify the purchaser of the general partnership interest. *See Pl.'s Resp. to Def. Mot. Dis. Am. Comp.*, at 9. In December 1999, the Pennsylvania

3

federal court approved the Settlement Agreement, incorporated its terms into a Consent Order, and retained jurisdiction to enforce its terms. *See Def.'s Mot Dis. Am. Comp.*, at 5.

Pursuant to the terms of the Consent Order, the limited partners authorized Vuono to solicit parties and entities interested in becoming the successor General Partner and to make recommendations to the limited partners concerning the successor to Perlstein. *Def.'s Orig. Mot Dis.* ,Ex. 1, *Aff. John A. Vuono*, ¶ 13.   It was in his capacity as counsel for a majority of the limited partners, that Vuono, a resident of Pennsylvania, traveled to Brownsville, Texas, in September of 1999, with another Committee member to investigate the property and meet with several prospective buyers. *See Def.'s Mot Dis. Am. Comp.*, at 5.  During the Brownsville visit Vuono admits meeting with Gary Clay and a Mr. McGrain. *Id.*, at 6.  Despite Defendants contention that Clay was a representative of Cornerstone Capital at the time of the Brownsville meeting, Plaintiff asserts that at that time Clay was actually the authorized representative of D. Steller 3, Ltd. (hereinafter, "Steller"), the entity that would ultimately purchase B.A.'s General Partnership. *See Pl.'s Resp. to Def. Mot. Dis. Am. Comp.*, at 7.

Contrary to Perlstein's claim, Vuono does not recall any contact with Steller until David Steller called him in early 2000. *See Def.'s Mot Dis. Am. Comp.*, at 6.  On February 14, 2000, Vuono sent a letter to Clay ("who was now Steller's representative"). *Id.*   In response to Clay's request, Defendant enclosed in that letter "documents concerning the finances of Brownsville Alliance, Ltd" including the February 2000 rent roll and a 1999 balance sheet. *See Pl.'s First Am. Orig. Comp.*, at 4. *Id.*

In late February of 2000, Steller faxed a response to Defendant setting out some of the terms and conditions for buying Perlstein's interest. *Id.*, at 7.  According to Vuono an ad hoc committee

of the limited partners then investigated and approved Steller. *Id.*   In contrast, Perlstein contends that Vuono alone negotiated the sale of Perlstein's general partnership interest and made representation to cause the sale of the interest to Steller. *See Pl.'s Resp. to Def. Mot. Dis. Am. Comp.*, at 7.  Further, Perlstein contends that because Vuono was the authorized representative for most of the limited partners during the negotiations of the general partnership interest with Steller, Vuono acted for Perlstein as a de facto fiduciary in the sale of Perlstein's general partnership interest.  *Id.*

Despite assurances from his lawyer that he would comply with the sale of his general partnership interest as set out in the Settlement Agreement, Perlstein refused to comply.  *See Def.'s Mot Dis. Am. Comp.*, at 7.  The limited partners filed a motion in the Pennsylvania federal court and, on May 8, 2000, the district judge granted the motion and ordered Perlstein to sign Steller's proposal. *See Id.*  On May 27, 2000, Perlstein signed an agreement with Steller (hereinafter the "Steller Agreement").  *Id.*, at 8.  In its lawsuit against Perlstein, Stellar alleged that Perlstein warranted the accuracy of both documents, that he had falsified certain facts and made statements that he knew to be false. *See  Pl.'s Resp. to Def. Mot. to Dism. Under Rules 12(b)(2) & 12(b)(6)*, at Ex. H, 2 - 3. Specifically, Stellar claimed that:

> "[P]erlstein has entered into a course of misconduct and mischievous business dealings whereby he has given false documentation and made false statements upon which Steller has relied in the purchase of the partnership interest as follows:

| Duty to provide accurate rent rolls | BREACHED |
|---|---|
| Duty to disclose defective conditions of real estate | BREACHED |
| Duty to turn over segregated account with tenant security deposits | BREACHED |
| Duty to turn over all partnership accounts | BREACHED |

| | |
|---|---|
| Duty to accurately disclose tenant security deposits | BREACHED |
| Duty to accurately disclose non-interested portion of mortgage payable | BREACHED |
| Duty to accurately disclose non-interest portion of mortgage payable at closing | BREACHED |
| Representation that partnership was not party to any long term services contract | BREACHED |
| Duty to provide post December 31, 1999 financials prior to closing | BREACHED |
| Duty to accurately disclose accounts payable per generally accepted accounting principles | BREACHED |
| Duty to disclose material change in financial condition | BREACHED |

*See Id.*

In January of 2002 Steller sued Perlstein in Cameron County, Texas alleging breach of contract, breach of warranty, fraud and negligent misrepresentation. *See Def.'s Resp. to Pl.'s Mot. Rem.*, Ex. J. On March 7th, 2006, the 138th Judicial District Court of Cameron County, Texas, (hereinafter "the 138th District Court") granted Steller's Motion for Summary Judgment against Perlstein and awarded damages for claims arising from: a) the rent rolls; b) the sewage leak in the resaca; c) unsegregated tenant security deposits; d) bank balances as of closing; e) non-interest portion of mortgage payment payable by closing; f) misrepresented long term satellite service contract; and g) understatement of liabilities. *See Id.*, at Ex. L. In addition to granting Stellar's MSJ, the 138th District Court held that Perlstein take nothing by his counterclaims and affirmative defenses. *Id.* The total amount of the judgment was $2,403,975.91. *See Id.* Ultimately, Perlstein and

6

Stellar signed a "Settlement Agreement and Mutual Releases Between D. Steller 3, Ltd. and Alfred Perlstein" wherein Plaintiff agreed to pay approximately one quarter (1/4) of the amount of the judgment and give up control of his remaining interest in BA in return for non-execution of the judgment and release of judgment upon his death. *See Id.,* at Ex. M. Ultimately, Perlstein contends in this lawsuit that Vuono's negligent misrepresentations to Steller and Vuono's negligent negotiations with Steller were the basis for Steller's successful lawsuit against himself. *See Pl.'s First Am. Orig. Pet*, 7. As a result, Perlstein now brings the present suit against Vuono for contribution under the Texas Civil Practice and Remedies Code Chapter 33 for "$2,403,975.91, consisting of Plaintiff's liability to a third party, D. Steller 3, Ltd. . . .." *Id.*

## II. STANDARD OF REVIEW

Motions to Dismiss for failure to state a claim pursuant to Rule 12(b)(6)[2] are viewed with disfavor and are rarely granted. *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988)). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the statement of the claim for relief, not the facts that support it. *See Nevarez v. United States*, 957 F.Supp. 884, 889 (W.D. Tex. 1997).

When ruling on a Rule 12(b)(6) motion, the Court must liberally construe the complaint in favor of the plaintiff and assume the truth of all well-pleaded facts. *See Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002). "A motion to dismiss for failure to state a claim under Federal Rule of Civil

---

[2] Because the Court holds that Plaintiff is prohibited from maintaining an action for contribution against Defendant under Texas law, it will not address the additional grounds for relief raised in Defendant's Motion to Dismiss.

Procedure 12(b)(6) is to be evaluated only on the pleadings." *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985); *accord Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir.1986). "This standard of review under rule 12(b)(6) has been summarized as follows: 'the question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'" *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir. 1999) (*quoting Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure§1357, at 601 (1969))*.  The court may not dismiss a plaintiff's action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Southern Christian Leadership Conference*, 252 F.3d at 786 (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 101 (1957)).  A plaintiff's conclusory allegations or legal conclusions masquerading as factual assertions are insufficient to defeat a motion to dismiss.  *See Id.*

## III. ANALYSIS

Initially, it is undisputed that Perlstein's sole cause of action in this lawsuit is one for contribution against Vuono under Chapter 33 of the Texas Civil Practice and Remedies Code. *Pl.'s First Am. Orig. Pet.*, at 7 - 8.  Simply stated, Perlstein seeks to recover from Vuono the damages Perlstein suffered as a result of the judgment that Steller obtained against Perlstein. *See Id,.* Perlstein maintains his claim via "contribution under the Texas Civil Practice and Remedies Code Chapter 33 from Vuono for the amount of the judgment rendered against Perlstein in proportion to the respective percentage of responsibility of Vuono, as to be determined in this action." *See Pl.'s First Am. Orig. Pet.*, at 7. ("Vuono's negligence in dealing with Steller in selling Perlstein's general partnership interest to Steller caused Steller to obtain the Judgment against Perlstein resulting in Perlstein being damaged.")

8

As stated previously, on March 7, 2006, the 138th District Court granted summary judgment in favor of Steller and against Perlstein in the amount of $2,403,975.91 (hereinafter referred to as the "Steller Judgment"). *See Def. Resp. to Pl.'s Mot. Rem.*, Ex. L.  On May 18, 2007, Perlstein settled the Steller Lawsuit against him by entering into a settlement agreement entitled, "Settlement Agreement and Mutual Releases between D. Steller 3, Ltd. and Alfred Perlstein". *Id.,* at Ex. M.  The settlement agreement states that the parties ". . . desire to settle and compromise all disputes between them including all claims and counterclaims that were, or that could have been, asserted in the Steller Lawsuit, the Appeal, the Adversary, and the Bankruptcy Case." *Id.,* at Ex. M,¶ II (e).  Ultimately, Perlstein agreed to 1) pay Steller $600,000.00 and 2) to give Stellar control over Perlstein's remaining partnership interest in exchange for Steller's agreement to release Perlstein from all claims including the Judgment. *See Id.,* at Ex. M,¶ III (2).  As part of the agreement:  a) Steller has agreed to take no action to execute on the judgment, other than to perfect a lien; and b) Steller will formally release the` judgment upon Perlstein's death. *See Id.,* at Ex. M, ¶ III (9)(d)&(e).

The Supreme Court of Texas has consistently held based on Chapter 33 of the Texas Civil Practice and Remedies Code that a settling person cannot pursue an action for contribution from a non-settling person or entity. *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987); *Texas Distributors, Inc. v. Texas College*, 747 S.W.2d 371 (Tex. 1987);  *International Proteins Corporation v. Ralston-Purina Company*, 744 S.W.2d 932, 934 (Tex. 1988).  Under well-established Texas law, therefore, a settling tortfeasor is not entitled to contribution from a non-settling tortfeasor(s). *Brown v. KPMG Peat Marwick*, 856 S.W.2d 742, 750 (Tex. App. El Paso, 1993) *(internal citations omitted); see also Filter Fab, Inc. v. Delauder*, 2 S.W. 3d 614, 617 (Tex. App. – Houston[14th Dist.] 1999) ("[u]nder Texas law it is a well established principle that a joint tortfeasor

9

who settles a lawsuit is not entitled to contribution from other tortfeasor.") *see also Jackson v. Freightliner Corporation*, 938 F. 2d 40, at 41 - 42 (5ᵗʰ Cir. 1991) (examining Texas case law that holds that a settling tortfeasor has no right of contribution against a non-settling tortfearsor).  In *Jinkins*, three settling defendants tried to bring post-settlement counterclaims for contribution against the remaining non-settling defendant. *Jinkins*, 739 S.W.2d, at 20.  The Supreme Court held that "a defendant can settle only his proportionate share of common liability and cannot preserve contribution rights under either the common law or the comparative negligence statue by attempting to settle the plaintiff's entire claim." *Id*, at 22.

In his submissions, Perlstein attempts to carve out an exception to this well established rule by arguing that *Jinkins* applies only to parties that settle *prior* to judgment. *See Pl.'s Resp. to Def.'s Mot. Dis.*, at 19.  Specifically, Perlstein frames the issue as ". . . whether a party that made payment arrangements post-judgment may seek to recover contribution from a party that was not a party to the underlying case." *Pl.'s Supp. Br. in Supp. of Pl's Resp. to Def.'s Mot. to Dis.*, at 8.  Under the applicable Texas Contribution Statute,  a "'settling person' means a person who has, *at any time*, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought." TEX. CIV. PRAC. & REM. CODE §33.011(5) (Vernon 2008) *(emphasis added)*[3].  For purposes of Chapter 33 of the Texas Civil Practice and Remedies Code, therefore, the fact that Perlstein settled with Steller after the court issued its summary judgment has no effect on Perlstein's status as a "settling person".

---

[3] TEX. CIV. PRAC. & REM. CODE §33.011(5) was amended to its current version in 2003.  It was this current version that was in effect during the period in which Perlstein settled with Steller. *See Def. Resp. to Pl.'s Mot. Rem.*, at Ex. M.

Further, despite Perlstein's attempt to draw a meaningful distinction between pre and post-judgment settling tortfeasors, Texas case law holds that a tortfeasor who had settled with a claimant after having had a summary judgment granted against it is prohibited from maintaining an action for contribution against a non-settling, joint tortfeasor. *See Brown*, 856 S.W.2d, at 750.  In *Brown*, a plaintiff / cross-defendant, Estoril, had summary judgment entered against it.  *Id.,* at 750. Subsequent to the entry of summary judgment against it, Estoril proceeded to settle the claims of some of the defendants/cross-plaintiffs. *Id.* Ultimately, the Court of Appeals held that Estoril's post-summary judgment settlement was governed by "well-settled Texas law that a settling tortfeasor is not entitled to contribution from a non-settling tortfeasor." *Id. (citing International Proteins Corporation*, 744 S.W.2d, at 934; *Jinkins*, 739 S.W.2d at 19).  The *Brown* court further held that ". . .a tortfeasor's settlement with the injured party will render his claim for contribution from a joint tortfeasor moot."*Id. (internal citations omitted).*[4]

---

[4]  Perlstein argues that two cases, *Haring v. Bay Rock Corp.*, 773 S.W.2d 676, 681 (Tex. App. – San Antonio, 1989), and *Pacesetter Pools, Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827, 832 - 833 (Tex. App. – Austin, 2002) militate in favor of permitting Plaintiff to maintain his contribution claim against Vuono. *Pl.'s Supp. Br. in Supp. of Pl.'s Resp. to Def. Mot. to Dis.*, at 6-7.  Upon examination, however, the court in *Haring* clearly predicated its decision upon the fact that Haring's claims were being governed by a now-repealed statute, §33.017 of the Texas Civil Practice and Remedies Code. *See Haring*, 773 S.W.2d, at 681.  Ultimately, the court held that Haring could proceed with his contribution claim only as a result of the "right set out in *old §33.017 . . . .*" *Id.* (*emphasis added*). That provision did not exist in the 2003 version of the Code which controlled Perlstein's lawsuit. Similarly, in *Pacesetter* the Austin Court of Appeals held that a Defendant that had paid an interlocutory arbitration award did not fall under the definition of a "settling person" under chapter 33 of the Texas Civil Practice and Remedies Code because, "[a]rbitration is not a settlement." *See Pacesetter*, 86 S.W.3d, at 832.  Upon review neither of these cases provides the Court with any basis upon which to contravene the consistent and longstanding principle that a joint tortfeasor who settles a lawsuit with a claimant is not entitled to maintain an action for contribution from other tortfeasor. *See Jinkins*, 739 S.W.2d at 22; *International Proteins Corporation* 744 S.W.2d, at 934; *Filter Fab, Inc.*, 2 S.W. 3d at 617.

Ultimately, Perlstein became a "settling person" for purposes of Chapter 33 of the Texas Civil Practice and Remedies Code on May 18, 2007, the day that he chose to sign the Settlement Agreement with Steller. *See* Tex. Civ. Prac. & Rem. Code §33.011(5) (Vernon 2008).  Choosing in a separate lawsuit to seek contribution from Vuono after settling with Steller was not Perlstein's lone remedy.  Perlstein had the opportunity of joining Vuono into Steller's lawsuit by suing him for contribution as a third party. *See* Tex. Civ. Prac. & Rem. Code §33.015, 33.016 (Vernon 1997). Additionally, had Perlstein been unable to join Vuono as a co-defendant in the Steller lawsuit for some reason, Perlstein still had the option of naming Vuono a "responsible third party". *See* Tex. Civ. Prac. & Rem. Code §33.004 (Vernon 2008).   Had he done so, Perlstein could have sought from the fact finder a determination of Vuono's percentage of responsibility for Steller's damages. *See* Tex. Civ. Prac. & Rem. Code §33.003 (Vernon 2008, eff. Sept. 1, 2003).  In doing so, he could potentially have reduced the percentage of his own responsibility for the Steller's damages. *See* Tex. Civ. Prac. & Rem. Code §33.013 (Vernon 2008, eff. Sept. 1, 2003).[5]

Despite having these other options and remedies at his disposal,  Perlstein chose instead to become a settling person before he ever sought to obtain contribution from Vuono.  Given that the lone cause of action in this lawsuit is for contribution against Vuono, and given that established Texas law prohibits a settling tortfeasor from prosecuting a claim for contribution from a non-settling tortfeasor, Perlstein's claims against Vuono are hereby DISMISSED WITH PREJUDICE,

---

[5]Finally, there appears to be some authority supporting the argument that one could have chosen to pay the judgment and then brought his action for contribution. *See Ingersoll-Rand Co. v. Valero Energy Corp.* 997 S.W.2d 203, 208 (Tex. 1999) (holding that in a contribution claim against a joint tortfeasor liability could not have been established until judgment was rendered). Obviously, this did not occur so the court need not analyze the validity of this dicta.

12

and Defendant John A. Vuono's Motion to Dismiss Plaintiff's First Amended Complaint under Rules 12(b)(2) and 12(b)(6) is hereby GRANTED.[6]

## IV. CONCLUSION

After thoroughly reviewing of all of the parties' submissions, the pleadings on file as well as entertaining oral argument on this matter, and for the reasons set forth above, the Court hereby **GRANTS** Defendant John A. Vuono's Motion to Dismiss based upon rule 12(b)(6), and **DISMISSES** Plaintiff's claim with prejudice.

Signed this 13th day of August, 2008.

_____
Andrew S. Hanen
United States District Judge

---

[6]Defendant John A. Vuono's original Motion to Dismiss Plaintiff's Complaint under Rules 12(b)(2) and 12(b)(6) as well as any other motions that are still pending in this lawsuit are hereby dismissed as moot.